HUGHES, Circuit Judge, joined by' LOURIE, BRYSON, and DYK, Circuit Judges, dissenting. Congress barred judicial review of the Patent and Trademark Office (PTO) Director’s decision to institute inter partes review (IPR) in 35 U.S.C. § 314(d). The majority opinion, however, limits this prohibition to the Director’s assessment of the criteria for instituting review set forth in § 314. Accordingly, this court finds that § 314(d) does not apply to other preliminary determinations, such as whether the petition was timely filed. I do not agree with such a narrow reading of the statute, which not only contradicts the statutory language, but is also contrary to the Supreme Court’s construction of that language in Cuozzo Speed Technologies, LLC v. Lee, — U.S. -, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016). In Cuozzo, the Supreme Court held that § 314(d) prohibited. judicial review of “questions that are closely tied to the application and interpretation of statutes related to the Patent Office’s decision to initiate inter partes review,” including questions of compliance- with 35 U.S.C. § '312(a)(3)’s petition requirements. 136 S.Ct. at 2141. 35 U.S.C. § 315(b), which describes when an IPR may be “instituted,” is even more closely related to institution decisions than § 312(a)(3)—which does not use- the word “institute.” In my view, Cuozzo confirms that § 314(d) is not limited to the merits of the petition, but also bars judicial review of closely related issues such as the petition’s timeliness. Because the majority opinion is inconsistent with Cuozzo and the plain meaning of § 314(d), I respectfully dissent. I Our inquiry should start and end with the words of the statute. The APA exempts agency actions from judicial review “to the extent that statutes preclude judicial review.” 5 U.S.C. § 701. There is a “strong presumption that Congress intends judicial review of administrative action” and any contrary intent must be clear and convincing. Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670-71, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). This presumption, of course, is not insurmountable. Congress can enact specific statutes to bar review, or the legislative history might manifest Congress’s intent to do so. Id. at 673, 106 S.Ct. 2133. Even in the absence of an express prohibition, the overall statutory structure might indicate that Congress sought to prohibit judicial review. See United States v. Fausto, 484 U.S. 439, 447-48, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); Block v. Cmty. Nutrition Inst., 467 U.S. 340, 352, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). Congress’s intent to prohibit judicial review of the Board’s IPR institution decision is clear and unmistakable. Section 314(d) states “[t]he determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable.” (emphasis added.) The statute calls out a specific agency determination, and expressly prohibits courts from reviewing that decision. “Absent persuasive indications to the contrary, we presume Congress says what it means and means what it says.” Simmons v. Himmelreich, — U.S. -, 136 S.Ct. 1843, 1848, 195 L.Ed.2d 106 (2016). Cuozzo confirms this interpretation of § 314(d). There, the Supreme Court found that clear and convincing indications overcame the presumption in favor of judicial reviewability with respect to IPR institution decisions. Cuozzo, 136 S.Ct. at 2140. To reach this conclusion, the Court looked to the plain language of the statute, and stressed that whether the “Patent Office unlawfully initiated its agency review is not appealable” because “that is what § 311(d) says.” Id. at 2139. (emphasis added). Cuozzo also foreclosed any notion that § 314(d) only applies to the question of whether the petition raises a reasonable likelihood of invalidity. See id. at 2141. Instead, the statute prohibits judicial review of “questions that are closely tied to the application and interpretation of statutes related to the Patent Office’s decision to initiate inter partes review.” Id. The petition’s timeliness under § 315(b) is part of the Board’s institution decision, and is therefore barred from judicial review. Section 315(b) states that “[a]n inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent.” The question of timeliness does not go to the merits of the petition, nor does it become part of the PTO’s final determination. Instead, the PTO evaluates timeliness within the context of the PTO’s preliminary determination of whether to institute IPR at all. Accordingly, timeliness under § 315(b) is plainly a question “closely tied” to the Director’s decision to institute. Indeed, it is a specific requirement for “institution.” Moreover, although Justice Alito disagreed with the ultimate result in Cuoz-zo, even he recognized that “the petition’s timeliness, no less than the particularity of its allegations, is ‘closely tied to the application and interpretation of statutes related to the Patent Office’s decision to initiate ... review,’ and the Court says that such questions are unreviewable.” Id. at 2155 (Alito, J., concurring in part and dissenting in part) (alteration in original). This court, however, confines the scope of the judicial review bar in § 314(d) to “the determination by the Director whether to institute IPR as set forth in § 314,” which establishes the reasonable likelihood standard for instituting review. Maj. Op. at 1371-72. But again, Cuozzo already held that § 314(d) is not limited to the Director’s reasonable likelihood determination. 136 S.Ct. at 2141. The Supreme Court rejected the notion that the presumption of judicial review permits courts to review “any issue bearing on the Patent Office’s preliminary decision to institute inter partes review.” Id. Rather, the Supreme Court explained that “Congress has told the Patent Office to determine whether inter partes review should proceed, and it has made the agency’s decision ‘final’ and ‘nonappealable.’ § 314(d). Our conclusion that courts may not revisit this initial determination gives effect to this statutory command.” Id. To sidestep this binding precedent, the majority states that § 315(b) is appealable because “the time-bar determination may be decided fully and finally at the institution stage.” Maj. Op. at 1373. And the majority suggests that § 314(d) is limited to “non-initiation or preliminary-only merits determinations for which unreviewability is common in the law.” Id. But if § 314(d) only applies to issues that are incorporated into the final written decision, then the appeal bar essentially becomes a prohibition on interlocutory appeal. The Supreme Court expressly rejected this interpretation in Cuozzo, 136 S.Ct. at 2140. As the Court explained: The dissent, like the panel dissent in the Court of Appeals, would limit the scope of the “No Appeal” provision to interlocutory appeals, leaving a court free to review the initial decision to institute review in the context of the agency’s final decision. We cannot accept this interpretation. It reads into the provision a limitation (to interlocutory decisions) that the language nowhere mentions and that is unnecessary. The Administrative Procedure Act already limits review to final agency decisions. The Patent Office’s decision to initiate inter partes review is “preliminary,” not “final.” And the agency’s decision to deny a petition is a matter committed to the Patent Office’s discretion. So, read as limited to such preliminary and discretionary decisions, the “No Appeal” provision would seem superfluous. Id. (citations omitted). The majority concludes that the appeal bar does not apply to “limits on the Director’s statutory authority to institute,” Maj Op. at 1374. But this position was clearly rejected in Cuozzo, 136 S.Ct. at 2139-40. Even setting aside Cuozzo, the Supreme Court also rejected this type of statutory interpretation in Briscoe v. Bell, 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977). Briscoe involved the Voting Rights Act, which allowed the Attorney General to determine whether “the preconditions for application of the Act to particular jurisdictions are met.” Id. at 407, 97 S.Ct. 2428. The statute provided that “[a] determination or certification of the Attorney General or of the Director of the Census under this section ... shall not be reviewable in any court ....” Id. at 408, 97 S.Ct. 2428. The D.C. Circuit explained that “[i]t is ... apparent that even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority.” Id. (quoting Briscoe v. Levi, 535 F.2d 1259, 1265 (D.C. Cir. 1976)). The D.C. Circuit further concluded that this statute barred judicial review of substantive issues like “the actual computations made by the Director of the Census,” but not “whether the Director acted ‘consistent with the apparent meaning of the statute.’” Id. at 408-09, 97 S.Ct. 2428 (quoting Briscoe, 585 F.2d .at 1265). The Supreme Court reversed, and found that “[ejection- 4(b) of the Voting Rights Act could hardly prohibit judicial review in more explicit terms.” Id, at 409, 97 S.Ct. 2428. The Court stressed that “[t]he language is absolute on its face and would appear to admit of no exceptions.” Id. Section 314(d) similarly prohibits review of “the determination by the Director whether to institute an -inter partes review.” Like the statute in Briscoe, the language is absolute and provides no exceptions. Nevertheless, the majority concludes that “[t]he timely filing of a petition under § 315(b) is a condition precedent to the Director’s authority to act.” Maj. Op. at Í374 (emphasis added), Like the D.C. Circuit in Briscoe, the majority attempts to distinguish between “a decision of the Board made within its jurisdiction” and “an order of the Board made in excess of its delegated powers.” Briscoe, 535 F.2d at 1264. The Supreme Court rejected this reasoning, and we should too. Ñor does the phrase “under this section” in § 314(d) limit the bar on judicial review to only a subset of requirements for institution. This court’s majority opinion finds that § 314(d) does not bar review of timeliness- because the phrase “under this section” “limits the reach of § 314(d) to the determination by the Director whether to institute IPR as set forth in § 314.” Maj. Op¡ at 1372 (emphasis added). But to be clear, the phrase “under this section” simply refers to the fact that inter partes review is instituted under § 314. The phrase does not limit the bar on judicial review to the Director’s assessment of the criteria under § 314.-Indeed, Cuozzo foreclosed this reading by holding that-the bar on judicial review extends to the Director’s assessment of the requirements under § 312, which is plainly a different statutory section than § 314. 136 S.Ct. at 2141. II The plain language of § 314(d) should lead us to conclude that Congress intended to preclude judicial review of whether IPR petitions are timely filed. To the extent the statute is unclear’, the history of the AIA dispels any doubt that § 314(d) bars judicial review of issues like timeliness and the identity of real parties in interest. The difference between- § 314(d) and the bar on judicial review for reexaminations confirms that Congress intended to broadly prohibit review of IPR institution decisions. -“[A] change in phraseology” in the statute “creates a presumption of a change in intent.” Crawford v. Burke, 195 U.S. 176, 190, 25 S.Ct. 9, 49 L.Ed. 147 (1904). And it is unlikely that Congress would enact a statutory provision using different language “without thereby intending a change of meaning.” Id.; see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning, — U.S. -, 136 S.Ct. 1562, 1578, 194 L.Ed.2d 671 (2016) (Thomas, J.; concurring) (“[W]hen Congress enacts a statute that uses different language from a prior statute, we normally presume that Congress did so to convey a' different meaning.”). Even before the AIA, third-parties could seek administrative patent cancellation through reexamination. When the PTO receives a request for reexamination, the Director, must determine whether the request raises a substantial new question of patentability. And 35 U.S.C. § 303(c) provides that, “[a] determination by the Director ... that no substantial new question of patentability has been raised will be final and nonappealable.”[1] Accordingly, the statute specifically bars review of the narrow issue of whether the request raises a “substantial new question of patentability.” Id. The statute does not bar review of the entire decision to initiate reexamination. In stark contrast, Congress used markedly different language for inter partes review and post-grant review proceedings. Instead of barring review of the Director’s determination of a specific issue, § 314(d) and 35 U.S.C. § 324(e) broadly prohibit review of the Director’s “determination ... whether to institute” review. Accordingly, these statutes identify a specific action by the Director, not tied to the resolution of a specific issue such as substantial new question of patentability. Such linguistic differences are particularly significant because the AIA retained § 303(c), with its different language, with respect to reexaminations. Ill Even if we followed the majority’s approach and tried to parse out which requirements for institution are barred from judicial review under § 314, it still makes no sense to distinguish § 315 from §§ 311— 314. The assumption that § 315 is less closely related to § 314 than the institution criteria of '§§ 311-313, see Maj. Op. at 1373-74, is simply incorrect. For example, § 312(a)(1) and § 312(a)(2) relate to the payment of fees and identification of real parties in interest, which the majority agrees cannot be appealed. These issues, however, bear the same relation to the institution decision as the inquiry under § 315. Under § 315(b), the Director cannot institute review if the petition was filed more than one year after the petitioner or its real party in interest was served with a complaint alleging infringement. And petitioners have the onus to identify all real parties in interest under § 312(a)(2), which states, that a petition “may be considered only if ... the petition identifies all real parties in interest.” Based on the petitioner’s disclosure, the Director can assess whether any of the petitioner’s real parties in interest was served with a complaint more than one year before the petition. Thus, § 312(a)(2) is part and parcel of the timeliness inquiry under § 315. The majority tries to distinguish between the real party in interest inquiry under § 312(a)(2) and § 315(b). Specifically, the majority notes that “if a petition fails to identify all real parties in interest under § 312(a)(2), the Director can, and does, allow the petitioner to add a real party in interest.” Maj. Op. at 1374 n.ll. By contrast, a petition that is time-barred under § 315 cannot be rectified. Id. To illustrate why this distinction is flawed, suppose that a patent owner argues that an unidentified third-party, who has not been sued for infringement, is a real party in interest to the petition. The Director disagrees with the patent owner and institutes review. No one disputes that the Director’s decision on real party in interest is unreviewable in this scenario. Now suppose the Director makes the exact same determination, but with respect to a third-party who was sued more than one year before the petition was filed. Even though the Director is making the same factual inquiry, his determination now becomes reviewable because it implicates the time-bar. This result is illogical. The same inquiry does not become more or less “closely related” to the institution determination simply because the results of that inquiry have different consequences. The facts of this appeal underscore why timeliness under § 315 is as closely related to the institution decision as the requirements under § 312. Wi-Fi One does not contend that Broadcom itself was served with a complaint more than one year before its petition. Rather, Wi-Fi One asserts that various defendants in a 2010 Texas lawsuit were unidentified real parties in interest to Broadcom’s petition. On remand, the panel must determine whether the Board properly resolved which parties constitute a real party in interest under § 312(a)(2). Even Wi-Fi One recognizes that this inquiry is highly fact dependent, as it sought broad-ranging discovery into agreements, payments, and e-mail communications in the proceedings below. But giving the Board wide discretion on such preliminary determinations is what enables IPRs to function as an efficient method of resolving validity issues. Congress would not have “giv[en] the Patent Office significant power to revisit and revise earlier patent grants ... if it had thought that the agency’s final decision could be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review.” Cuozzo, 136 S.Ct. at 2139-40. Vacating the Board’s invalidity decision on the basis of threshold questions like timeliness or real parties in interest will squander the time and resources spent adjudicating the actual merits of the petition. This is counter to the AIA’s purpose of “providing quick and cost effective alternatives to litigation.” H.R. Rep. No. 112-98, pt. 1, at 48 (2011). Congress recognized this issue, so it prohibited this court from reviewing the Board’s institution decision. It is not our prerogative to second-guess that policy decision, nor should we rely on tenuous statutory interpretations to undermine it. IV Because we do not have jurisdiction to review the Board’s determination that Broadcom’s petition was timely filed, I respectfully dissent. . This was similarly true under the old 35 U.S.C. § 312(c) (2006), governing inter partes reexamination, which barred appeal of ‘‘[a] determination by the Director pursuant to subsection (a),” i.e., the determination that "a substantial new question of patentability affecting any claim of the patent concerned is raised by the request.” 35 U.S.C. § 312(a) (2006).