*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 14-CV-48 and 14-CV-223

KISHA WALKER, APPELLANT,

V.

FEDEX OFFICE & PRINT SERVICES, INC.,
JAMIE PARKER,
NICOLE UGLOW A/K/A NICOLE FOLEY,
APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(CAB-3358-11)

(Hon. Michael L. Rankin, Trial Judge)

(Argued April 2, 2015       Decided August 13, 2015)

*John F. Karl, Jr.* for appellant Kisha Walker.

*John B. Flood*, with whom *M. Ginger McCauley* was on the brief, for appellee Nicole Foley.

*Jonathan R. Mook* for appellee Jamie Parker.

Before GLICKMAN and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant Kisha Walker seeks reversal of a trial-court order dismissing her suit against appellees Jamie Parker and Nicole Foley, employees of appellee FedEx Office & Print Services, Inc. Ms. Walker argues that the trial court committed both procedural and substantive errors. We affirm.

**I.**

The following facts are undisputed. Ms. Walker was a Senior Center Manager responsible for several FedEx stores in Washington, D.C. Ms. Parker supervised Ms. Walker, and Ms. Foley was a human-resources employee at FedEx. After FedEx terminated Ms. Walker's employment in 2010, Ms. Walker brought suit in the Superior Court, naming FedEx, Ms. Parker, and Ms. Foley as defendants. Ms. Walker alleged that she was terminated as a result of racial and gender discrimination in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 et seq. (2012 Repl.). Specifically, Ms. Walker alleged that FedEx terminated her at least in part due to a FedEx policy designed to reduce the number of African Americans and other minorities who worked as managers in her district. Ms. Walker further alleged that the defendants retaliated against her in violation of the DCHRA because she opposed the

imposition of discriminatory disciplinary measures against African American employees whom she supervised. FedEx contended that Ms. Walker was instead terminated for violating company performance and conduct standards.

FedEx filed a motion to compel arbitration, pursuant to an arbitration agreement that Ms. Walker had signed in 2008. That arbitration agreement provided, in pertinent part:

> [A]ny and all disputes that arise between Team Member and FedEx Kinko's, its officers, directors, employees, or agents, that are not resolved internally through the informal negotiation and problem-solving procedures shall be submitted to final and binding arbitration. Claims subject to arbitration include all claims and disputes arising from or relating to employment with FedEx Kinko's or the termination of employment. This Agreement specifically includes all claims or disputes . . . alleging discrimination or harassment (e.g., on the basis of age, gender, sexual orientation, race, disability, national origin, religion, or other unlawful basis), tort claims (e.g., defamation, infliction of emotional distress, wrongful termination in violation of public policy), [and] claims of retaliation . . . .
>
> . . .
>
> By agreeing to submit the described claims to binding arbitration, the Team Member . . . does knowingly waive the right to file or seek relief in a civil action of any nature seeking recovery of money damages or injunctive relief against FedEx Kinko's . . . . The Team Member understands that by agreeing to submit all claims to binding arbitration, he or she is knowingly waiving any right to trial by jury or other judicial forum that might otherwise exist.

. . .

> The Team Member agrees that this Agreement shall extend to FedEx Kinko's and also to its officers, directors, employees, agents, administrators, parent companies, subsidiary companies, and affiliated entities . . . .

Signing the agreement was not a mandatory condition of employment.

The trial court granted FedEx's motion to compel arbitration and stayed proceedings in the civil action. Ms. Walker then commenced arbitration, naming only FedEx as a respondent. Ms. Parker and Ms. Foley made no effort to become parties to the arbitration.

After a five-day evidentiary hearing and post-hearing briefing, the arbitrator issued a final decision. The arbitrator concluded that FedEx was not liable to Ms. Walker, because FedEx had not terminated Ms. Walker for discriminatory or retaliatory reasons. Specifically, the arbitrator concluded that "there was no evidence . . . that Ms. Parker or anyone else at FedEx" was concerned about how customers might view Ms. Walker based on her race; the interest of FedEx management in having a diverse workforce was not connected to the termination of Ms. Walker's employment; there was "no evidence that Ms. Parker or any other

FedEx official ever made any comment . . . about the race of any particular FedEx employee . . ."; "[t]here [was] no evidence that management was monitoring the race of hires . . . or that it had established any particular hiring goals in racial terms"; Ms. Parker's alleged statement that a particular employee made her skin crawl was "not probative of racial preference (or animus)"; even assuming that Ms. Parker at one point referred to an applicant's race, that was a stray remark unrelated to Ms. Walker's termination; there was evidence of problems with Ms. Walker's job performance; Ms. Walker failed to demonstrate that FedEx's reasons for discharging Ms. Walker were pretextual; there was "no evidence that the assessments of Ms. Walker's work performance were tainted by racial or retaliatory considerations"; and "the preponderance of the evidence in the record does not demonstrate that either racial or retaliatory animus was a substantial contributing factor in Ms. Parker's criticisms of Ms. Walker's job performance." The arbitrator also was "unable to find that Ms. Walker engaged in any activity protected by the DCHRA."

The trial court subsequently granted FedEx's motion to confirm the arbitrator's decision and dismiss Ms. Walker's suit against FedEx based on that decision. Ms. Walker has not challenged on appeal the dismissal of the suit against FedEx. Ms. Parker and Ms. Foley filed a motion to dismiss Ms. Walker's suit

against them, arguing among other things that the arbitrator's decision required dismissal "under the doctrines of *res judicata* and claim and issue preclusion." The trial court orally granted the motion to dismiss, on a "collateral estoppel[/]issue preclusion -- claim preclusion basis." In a subsequent written order, the trial court stated that "the arbitrator's decision necessarily considered the individual defendants and their actions towards the plaintiff; thus, their motion to dismiss should be granted on grounds of collateral estoppel/claims preclusion."

## II.

Ms. Parker and Ms. Foley raise two preliminary issues. First, they argue that the trial court lacked subject-matter jurisdiction, because Ms. Walker was required by the arbitration agreement to arbitrate her claims against Ms. Parker and Ms. Foley. Ms. Walker disputes that she was required to arbitrate her claims against Ms. Parker and Ms. Foley. We need not decide that issue. Upon motion of a party relying on an agreement to arbitrate, the court must determine whether there is an enforceable agreement. D.C. Code § 16-4407 (a) (2012 Repl.). If the court so determines, then the court must stay judicial proceedings and order arbitration. D.C. Code § 16-4407 (b), (f). Ms. Parker and Ms. Foley, however, did not ask the trial court to require arbitration of Ms. Walker's claims. Rather, they awaited the

outcome of the arbitration involving FedEx and then asked the trial court to dismiss on the basis of that arbitration. Under the circumstances, the trial court had subject-matter jurisdiction to decide the motion to dismiss. *See, e.g.*, *Lamell Lumber Co. v. Newstress Int'l, Inc.*, 938 A.2d 1215, 1220 (Vt. 2007) ("It is well settled that a clause providing for the resolution by arbitration of disputes arising under an agreement is not jurisdictional . . . .") (citing cases; ellipses in *Lamell*; internal quotation marks omitted).

Second, Ms. Parker and Ms. Foley argue that the trial court lacked personal jurisdiction over them. We also do not reach that issue. In general, courts "resolve personal jurisdiction before addressing a dispositive motion on the merits." *Hawkins v. W.R. Berkley Corp.*, 889 A.2d 290, 293 (D.C. 2005). That general rule is not absolute, however, and courts in appropriate circumstances may deny relief on the merits without deciding an issue of personal jurisdiction. *See, e.g.*, *Yazdani v. Access ATM*, 941 A.2d 429, 433 (D.C. 2008). In the present case, Ms. Parker and Ms. Foley have indicated that they have no objection to this court's resolving this appeal on the basis of claim or issue preclusion, without addressing their challenge to the trial court's personal jurisdiction. Under the circumstances, we elect to resolve the matter on the merits. *Cf. id.* at 434 (in upholding trial court's decision to decide case based on forum-selection clause without deciding issue of

personal jurisdiction, court notes that appellee "has not insisted on a jurisdictional ruling"); *cf. also, e.g.*, *Parker v. K & L Gates, LLP*, 76 A.3d 859, 865 n.6 (D.C. 2013) ("An objection to the court's personal jurisdiction is waivable . . . .") (ellipses in original; internal quotation marks omitted); *Fenelon v. United States Postal Serv.*, 43 F.3d 669, at *2 (5th Cir. 1994) (unpublished table decision) ("[A] dismissal on the basis of *res judicata* is . . . a final decision on the merits.").

## III.

Ms. Walker argues that the trial court erred procedurally, by ruling on a motion to dismiss rather than awaiting a summary-judgment motion. We disagree. We have previously held that the defenses of collateral estoppel and res judicata may be raised by a motion to dismiss. *Goldkind v. Snider Bros., Inc.*, 467 A.2d 468, 471-72 (D.C. 1983); *see, e.g.*, *Smith v. Public Def. Serv.*, 686 A.2d 210, 212 (D.C. 1996) (affirming dismissal on basis of collateral estoppel). Moreover, the trial court permissibly considered the arbitrator's decision in ruling on the motion to dismiss, because that decision was attached to the motion to dismiss and consisted of a ruling reached as part of the present litigation. *See* Super. Ct. Civ. R. 12 (b) (if defendant moves to dismiss for failure to state claim under Super. Ct. Civ. R. 12 (b)(6), and "matters outside the pleading are presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *Grimes v. District of Columbia, Bus. Decisions Info. Inc.*, 89 A.3d 107, 111 (D.C. 2014) ("A trial court is not required to convert a Rule 12 (b)(6) . . . motion into a motion for summary judgment, however, as long as the court does not consider matters outside the pleadings."); *Smith*, 686 A.2d at 212 (opinions, orders, briefs, and transcripts attached to motion to dismiss do not constitute "matters outside the pleading" requiring consideration of motion to dismiss as motion for summary judgment); *Cannon v. District of Columbia*, 569 A.2d 595, 597 n.3 (D.C. 1990) (per curiam) ("Proceedings in related cases may be judicially noticed."); *Missouri Bank & Trust Co. v. Gas-Mart Dev't Co.*, 130 P.3d 128, 132 (Kan. Ct. App. 2006) (arbitrator's decision attached to motion to dismiss was not "matter outside pleadings" and could properly be considered on motion to dismiss).

## IV.

Ms. Walker contends that the trial court erred in dismissing the case on "grounds of collateral estoppel/claims preclusion." We conclude that Ms. Walker's claims are barred by collateral estoppel.

Collateral estoppel bars relitigation of an issue of fact or law when "(1) the issue is actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; and (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Hogue v. Hopper*, 728 A.2d 611, 614 (D.C. 1999) (brackets, ellipses, and internal quotation marks omitted). "An arbitration award is considered a final judgment on the merits for purposes of res judicata," *EDCare Mgmt., Inc. v. DeLisi*, 50 A.3d 448, 451 (D.C. 2012), and we see no reason to reach a different conclusion for purposes of collateral estoppel. *See, e.g.*, *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267-68 (2d Cir. 1997) (collateral estoppel applies to confirmed arbitrators' decisions and even unconfirmed arbitrators' decisions if there has been final judgment). Collateral estoppel may be invoked defensively by a defendant who was not a party to the original proceedings, to prevent a plaintiff from relitigating an issue that the plaintiff had previously litigated unsuccessfully. *See, e.g.*, *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984); *Carr v. Rose,* 701 A.2d 1065, 1076 (D.C. 1997) ("[A] stranger to the first action may invoke issue preclusion against a party to that action. Hence the [] defendants, while not privy to the prior dispute, are not thereby necessarily prevented from asserting defensive 'non-mutual' collateral estoppel.") (citation omitted); *Dumont Tel. Co. v. Power & Tel. Supply Co.*, 962 F.

Supp. 2d 1064, 1081 (N.D. Iowa 2013) ("The doctrine of non-mutual defensive collateral estoppel prevents plaintiffs who lost to a defendant in arbitration from re-litigating the same issues against co-defendants in federal court."). Precluding "parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

In the present case, Ms. Walker brought the same claims against FedEx and against Ms. Parker and Ms. Foley, alleging that FedEx and the two individuals wrongfully terminated Ms. Walker as the result of racial and gender discrimination and retaliated against Ms. Walker. The arbitrator's decision reflects a rejection of those claims as a matter of fact and law.

Although Ms. Walker raises numerous objections to the trial court's collateral-estoppel ruling, we do not find those objections persuasive. First, Ms. Walker argues that Ms. Parker and Ms. Foley were not parties to the arbitration and were not in privity with FedEx. As we have already noted, however, this jurisdiction permits a defendant in an action to invoke collateral estoppel based on

a prior determination rejecting a plaintiff's claim against other parties, even in the absence of privity. *Carr*, 701 A.2d at 1076; *see also Schoenfeld v. U.S. Resort Mgmt., Inc.*, No. 05-4368-CV-C-NKL, 2007 WL 2908622, at *3 (W.D. Mo. Oct. 4, 2007) ("[I]t is immaterial that [defendant] was not a party to the arbitration; the mutuality requirement was excised from the collateral estoppel doctrine long ago.").

Second, Ms. Walker argues that the arbitrator did not actually resolve Ms. Walker's claims against Ms. Parker and Ms. Foley. It is true that the arbitrator did not explicitly and separately analyze Ms. Walker's claims against Ms. Parker and Ms. Foley. But in deciding that Ms. Walker had no claim against FedEx, the arbitrator focused extensively on Ms. Walker's claims about Ms. Parker's conduct and made numerous explicit findings inconsistent with Ms. Walker's claims against Ms. Parker and Ms. Foley. Moreover, the arbitrator ultimately concluded that Ms. Walker had failed to show that her termination was the result of discrimination or that there had been acts of retaliation in violation of the DCHRA. Those findings are fatal to Ms. Walker's claims against Ms. Parker and Ms. Foley. Under the circumstances, collateral estoppel is warranted. *Cf., e.g.*, *Hogue*, 728 A.2d at 614 (where arbitrator determined that plaintiff did not receive less than his share of funds following windup of company, plaintiff was collaterally estopped

from bringing subsequent claim against company's accountant in which plaintiff argued that he received less than his share due to accountant's alleged wrongdoings).

Third, we disagree with Ms. Walker's contention that the arbitrator's findings and conclusions do not foreclose the theory that Ms. Parker or Ms. Foley attempted to violate the DCHRA or aided and abetted a violation of the DCHRA. The complaint does not allege any conduct by Ms. Parker or Ms. Walker other than actions taken on behalf of FedEx, and the arbitrator's ruling that FedEx did not violate the DCHRA forecloses a theory that Ms. Parker or Ms. Foley aided and abetted such a violation by FedEx. *Cf., e.g.¸ Hairston v. United States*, 908 A.2d 1195, 1198 (D.C. 2006) ("To be an aider and abettor, one must aid or abet or procure someone else to commit a substantive offense. One cannot aid or abet himself.") (ellipses, emphasis, and internal quotation marks omitted); *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 156-57 (D.D.C. 2014) (court concludes that that university could not have aided and abetted employees in creating hostile work environment, because court found that no actionable hostility took place).

Fourth, Ms. Walker argues that collateral estoppel is inapplicable to rulings of law. We have held to the contrary. *See, e.g.*, *Franco v. District of Columbia*, 3

A.3d 300, 303-04 (D.C. 2010) ("Collateral estoppel, or issue preclusion, prohibits the relitigation of factual or legal issues decided in a previous proceeding and essential to the prior judgment.") (internal quotation marks omitted).

Fifth, Ms. Walker argues that for various reasons it would be inequitable to preclude her claims based on collateral estoppel. Specifically, Ms. Walker argues that she should be free to elect whether to pursue her claims against Ms. Parker and Ms. Foley through arbitration or through litigation in court, and that giving the arbitrator's decision collateral-estoppel effect would deprive her not only of the right to make that election but also of her related rights to a jury trial and to appeal from a trial-court ruling. By signing the optional arbitration agreement, however, Ms. Walker waived both her right to a jury trial for claims properly before the arbitrator and her right to appeal the arbitrator's final decision. *See BiotechPharma, LLC v. Ludwig & Robinson, PLLC*, 98 A.3d 986, 996 (D.C. 2014) ("Because an arbitration agreement necessarily embodies a waiver of the right to trial by jury, a determination that there is a valid arbitration agreement here would foreclose any claim [appellant] might have had to a jury trial."); *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992) ("[An arbitration agreement] is fundamentally a creature of contract, and parties to a contract should be held to the terms to which they have agreed.") (citation omitted). Moreover,

Ms. Walker is no longer contesting the validity of the arbitration agreement, which explicitly requires Ms. Walker to go to binding arbitration not only as to FedEx, but also as to FedEx employees such as Ms. Parker and Ms. Foley.

Finally, Ms. Walker argues that the arbitrator committed various factual and legal errors. In general, mere claims of error in the underlying judgment are not an adequate basis to avoid application of collateral estoppel. *Cf. Oubre v. District of Columbia Dep't of Emp't Servs.*, 630 A.2d 699, 703 (D.C. 1993) (describing application of preclusion principles in judicial proceedings as having "rigid finality"). Where the underlying ruling was made by an agency rather than a court, we have stated that a showing of "manifest error" may overcome the application of collateral estoppel. *Id.* at 703-04. We assume, without deciding, that collateral-estoppel principles are also applied somewhat less rigidly when the underlying judgment is an arbitrator's decision. *Cf.* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 4475.1 (2d ed. 2002) (indicating need for careful consideration before applying preclusion based on arbitrator's decision). Ms. Walker, however, has not demonstrated manifest error sufficient to permit Ms. Walker to relitigate issues resolved against her by the arbitrator.

Accordingly, the judgment of the Superior Court is

*Affirmed.*