*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CV-0356

ELIZABETH ANN SUM-SLAUGHTER, APPELLANT,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2020-CA-004114-B)

(Hon. Florence Pan, Trial Judge)

(Argued May 24, 2022                                    Decided August 15, 2024)

*Chelsea Bauer*, with whom *Catherine Hedgeman* was on the brief, for appellant.

*Kathleen Warin*, with whom *Betty G. Brooks* and *Ryan M. Duffy* were on the brief, for appellee.

Before BECKWITH[*] and DEAHL, *Associate Judges*, and GLICKMAN,[†] *Senior Judge*.

---

[*] Associate Judge AliKhan was assigned to this case originally.  Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Judge Beckwith was assigned to take her place on the panel.

[†] Judge Glickman was an Associate Judge of the court at the time of argument. He began his service as a Senior Judge on December 21, 2022.

GLICKMAN, *Senior Judge*: Elizabeth Ann Sum-Slaughter appeals the Superior Court's dismissal of her complaint against the Financial Industry Regulatory Authority (FINRA). Ms. Sum-Slaughter is a financial advisor who is registered with FINRA to conduct securities transactions with investors. She sued to obtain an order requiring FINRA to expunge information about a customer's complaint against her from the publicly accessible database that FINRA is required to maintain by the Securities Exchange Act of 1934 (the "Exchange Act"). Ms. Sum-Slaughter alleged that the requested expungement is appropriate under FINRA's own Rules and that the Superior Court possesses "inherent equitable power" to order it and grant declaratory and permanent injunctive relief to prevent republication.

The Superior Court granted FINRA's motion to dismiss Ms. Sum-Slaughter's complaint on grounds of collateral estoppel, based on the preclusive effect of a FINRA arbitration proceeding in which the arbitrator had denied Ms. Sum-Slaughter's expungement request. Without reaching the merits of that rationale, we affirm the dismissal for a different reason. We hold that the Superior Court lacked jurisdiction over Ms. Sum-Slaughter's lawsuit because Section 27(a) of the Exchange Act grants the federal district courts "exclusive jurisdiction" over "all suits in equity and actions at law brought to enforce any liability or duty created by [the

Exchange Act] or the rules and regulations thereunder."[1]   In the absence of such jurisdiction in the courts of the District of Columbia, we refrain from addressing other issues raised by Ms. Sum-Slaughter's complaint.

## I.

FINRA, formerly called the National Association of Securities Dealers, Inc., plays a central role in the comprehensive regulation of the securities industry under the Exchange Act.  That Act provides that most persons who wish to use any instrumentality of interstate commerce to transact in securities must join an association of brokers and dealers that is registered with the Securities and Exchange Commission as a national securities association.[2]  FINRA is a registered national securities association, which the Exchange Act refers to as a "self-regulatory organization" (SRO).[3]  The Exchange Act requires registered SROs to adopt and enforce membership and conduct rules "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, . . . to remove impediments to and perfect the mechanism of a free and open

---

[1] 15 U.S.C. § 78aa(a).

[2] *See* 15 U.S.C. § 78o(a)(1), (b)(1).

[3] *See id.* § 78s.

market and a national market system, and, in general, to protect investors and the public interest. . . ."[4] All Rules adopted by FINRA, including those relied upon by Ms. Sum-Slaughter in the present matter, must be approved by the SEC as consistent with the Exchange Act before they take effect.[5] Subject to SEC oversight, FINRA enforces its members' compliance with those rules and with the federal securities laws,[6] and for violations it "can—indeed, must—levy sanctions that carry the force of federal law."[7] The Exchange Act requires SROs themselves to comply with the Act, the SEC's Rules, and their own rules.[8]

Under this regulatory scheme, an SRO is required to collect and maintain information about its member firms and their registered representatives, including "disciplinary actions, regulatory, judicial, and arbitration proceedings, and other information required by law, or exchange or association rule, and the source and

---

[4] *Id.* § 78o-3(b)(6).

[5] *Id.* § 78s(b).

[6] *See id.* §§ 78o-3(b)(2), 78s(b), 78s(g)(1), 78s(h).

[7] *Turbeville v. FINRA*, 874 F.3d 1268, 1270 (11th Cir. 2017) (citing 15 U.S.C. § 78o-3(b)(7)).

[8] 15 U.S.C. § 78s(g).

status of such information."[9] This includes information regarding customer disputes. FINRA maintains this information in its Central Registration Depository (CRD). Information about certain events, including some customer disputes, also must be made available to the public.[10] FINRA fulfills this obligation through its "BrokerCheck" program, "an online database that contains a report on each currently and formerly registered broker."[11] As set forth in FINRA Rule 8312(g), certain categories of information are exempt or may be withheld from public disclosure; this includes "offensive or potentially defamatory language or information that raises significant identity theft, personal safety or privacy concerns that are not outweighed by investor protection concerns."

The SEC has explained that the CRD database and BrokerCheck reports serve securities regulators, the securities industry, and the public. "FINRA, state regulators, and other regulators use this information in connection with their

---

[9] *Id.* § 78o-3(i)(5).

[10] *See id.* § 78o-3(i)(1)(B)(i) ("A registered securities association shall . . . establish and maintain a toll-free telephone listing, and a readily accessible electronic or other process, to receive and promptly respond to inquiries regarding . . . registration information on its members and their associated persons[.]").

[11] *Turbeville*, 874 F.3d at 1271-72.

licensing and regulatory activities[,]" firms use it in making hiring decisions, and investors use it in choosing their brokers.[12]

FINRA's Rules provide an administrative review process for brokers who dispute the "accuracy" of information in their BrokerCheck reports. Rule 8312(e) provides that if FINRA determines the information is inaccurate, it will "update, modify or remove" it as appropriate; otherwise, FINRA will not change the reported information.[13] "A determination by FINRA, including a determination to leave unchanged or to modify or delete disputed information, is not subject to appeal."[14]

There is, however, another route that may be pursued by members or associated persons seeking to "expunge" customer dispute information from the CRD system. As stated in FINRA Rule 2080, they "must obtain an order from a court of competent jurisdiction directing such expungement or confirming an

---

[12] SEC Release No. 34-72649, 79 Fed. Reg. 43,809 (Jul. 22, 2014); *see also* SEC Release No. 34-73966, 80 Fed. Reg. 546, 547 (Dec. 30, 2014) ("Having complete and accurate information in CRD is important to regulators, the industry, and the public.").

[13] *See* FINRA Rule 8312(e)(3)(A)-(B).

[14] FINRA Rule 8312(e)(3)(C).

arbitration award containing expungement relief."[15]  FINRA must be named as a party to any litigation seeking expungement relief, but it may waive that requirement if "the expungement relief is based on affirmative judicial or arbitral findings" that "the claim, allegation or information is factually impossible or clearly erroneous," that "the registered person was not involved" in the alleged misconduct, or that "the claim, allegation or information is false."[16]

FINRA also administers an arbitration forum to resolve intra-industry and customer-initiated disputes in accordance with FINRA's Codes of Arbitration Procedure, which are approved by the SEC.[17]  The arbitrators are independent

---

[15] FINRA Rule 2080(a).  A "court of competent jurisdiction" is not defined in FINRA's Rules, but (as Ms. Sum-Slaughter acknowledges in her complaint) the term is understood to mean "a court with a grant of subject-matter jurisdiction covering the case before it."  *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92 (2017).

[16] FINRA Rule 2080(b)(1).  In addition, Rule 2080(b)(2) provides that if the expungement relief is based on other judicial or arbitral findings, "FINRA, in its sole discretion and under extraordinary circumstances," also may waive the obligation to name it as a party "if it determines that: (A) the expungement relief and accompanying findings on which it is based are meritorious; and (B) the expungement would have no material adverse effect on investor protection, the integrity of the CRD system or regulatory requirements."

[17] *See* 15 U.S.C. § 78s(b); *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 233-34 (1987) (explaining that the SEC has "expansive power to ensure the adequacy of the arbitration procedures employed by [an SRO]").

contractors, not FINRA employees, and are selected by the parties.[18]   A broker seeking to expunge customer complaint information from their CRD and BrokerCheck reports may submit this claim to arbitration in the FINRA-administered forum, in accordance with FINRA Rule 13805.[19]   The version of this Rule in effect at all relevant times in this case provided that an award granting expungement of customer dispute information had to explain "which of the Rule 2080 grounds for expungement" was the basis for the award and how those grounds "applie[d] to the facts of the case."[20]

## II.

Ms. Sum-Slaughter's complaint in Superior Court names FINRA as the only defendant.  The complaint seeks equitable relief in the form of an order requiring FINRA to expunge information relating to a particular customer dispute (referred to

---

[18] *See* FINRA Rules 13214, 13400-13404.

[19] FINRA substantially amended this Rule in 2023.  The amended Rule took effect on October 16, 2023.  The version of the Rule in effect from August 17, 2009, to October 15, 2023, was the Rule that applied to Ms. Sum-Slaughter's expungement request.

[20] Former FINRA Rule 13805(c).  The current Rule continues this requirement of a finding based on the three grounds identified in Rule 2080, with greater specificity.  *See* FINRA Rule 13805(c)(9)(A)(i).

as an "Occurrence") from Ms. Sum-Slaughter's CRD and BrokerCheck records, a declaratory judgment that the information should be expunged, and a permanent injunction against its future publication in her CRD and BrokerCheck reports. Citing D.C. Code § 11-921(a)(2), the complaint states that the Superior Court has subject matter jurisdiction to grant the requested relief as a "court of competent jurisdiction" within the meaning of FINRA Rule 2080 because it is a "court of general jurisdiction."[21]

As pertinent to the jurisdictional question before us, the complaint alleges the following.

Since April 2000, Ms. Sum-Slaughter has been registered with FINRA in connection with her employment by the firm of Merrill Lynch, Pierce, Fenner & Smith. At all relevant times, she was employed by Merrill Lynch as an Administrative Manager. In April 2011, a customer filed a claim in FINRA's Dispute Resolution arbitration forum against Merrill Lynch, Ms. Sum-Slaughter, and three other employees of the firm, to recover losses on his options trading that

---

[21] D.C. Code § 11-921(a)(2) provides for the Superior Court to have jurisdiction of "any civil action or other matter, at law or in equity" brought in the District of Columbia. However, § 11-921(b) adds the qualification that "[t]he Superior Court does not have jurisdiction over any civil action or other matter . . . over which exclusive jurisdiction is vested in a Federal court in the District of Columbia[.]"

he attributed to the fault of his brokers at the firm. As regards Ms. Sum-Slaughter, the customer claimed that she had failed to supervise his Merrill Lynch financial advisers. In June 2012, Merrill Lynch settled the claim by paying the customer $104,000.

Ms. Sum-Slaughter did not participate in the settlement discussions or contribute to the settlement amount. She claims the customer's complaint against her was meritless because, as an Administrative Manager at Merrill Lynch, she was never the customer's financial adviser, nor was she compensated on the customer's account or transactions; the customer was an experienced investor who knowingly engaged in aggressive, self-directed options trading despite repeated letters from Ms. Sum-Slaughter warning him of the risks; and she did not fail to supervise the Merrill Lynch brokers who were the customer's financial advisers.

In accordance with FINRA Rules, Merrill Lynch reported the 2011 customer dispute to FINRA, and FINRA maintained information about the dispute in Ms. Sum-Slaughter's CRD record and published some of that information in her BrokerCheck report. The BrokerCheck entry, which is in the record on appeal as an exhibit to FINRA's motion to dismiss the complaint, stated only that the allegation against Ms. Sum-Slaughter was a "failure to supervise" in connection with transactions involving mutual fund options; the customer claimed damages of

$262,541; the claim was settled for $104,000; and Ms. Sum-Slaughter contributed no money to the settlement. In addition, the BrokerCheck entry included Ms. Sum-Slaughter's response that she was not involved in the underlying transactions, was named solely in her role as a supervisor, and did not contribute monetarily to the settlement.

Several years later, in November 2018, Ms. Sum-Slaughter filed a claim in FINRA's arbitration forum seeking expungement of the customer's complaint from her CRD and BrokerCheck records pursuant to FINRA Rule 2080. Merrill Lynch, named as the respondent, filed an answer stating it took no position regarding the expungement request. On May 23, 2019, the arbitrator assigned to the case executed an award denying Ms. Sum-Slaughter's expungement request. Although the full contents of the award are not set forth in her Superior Court complaint, the award is in the record as an exhibit to FINRA's motion to dismiss. It states that Ms. Sum-Slaughter was represented by counsel, that the arbitrator conducted a recorded telephonic hearing in which Ms. Sum-Slaughter presented evidence and argument on her request for expungement, and that Merrill Lynch participated and did not contest the request. (The customer, who had been notified and afforded an opportunity to present evidence in the arbitration, also did not oppose expungement.) The award states that the arbitrator denied the request for expungement "[a]fter considering the pleadings, the testimony and evidence presented at the hearing." The

award does not contain any further discussion of the evidence or further explanation of the decision.[22]

A few months after the rendition of the arbitration award, Ms. Sum-Slaughter filed a motion to vacate it. She filed this motion in Broomfield County District Court in Colorado and served it only on Merrill Lynch. On October 11, 2019, that state court issued an order granting the motion to vacate. Ms. Sum-Slaughter's Superior Court complaint says nothing more about the Colorado court case. However, the motion and proposed order that she filed there, Merrill Lynch's response, and the Broomfield County Court's order are part of the record before us, as FINRA appended them as exhibits to its motion to dismiss Ms. Sum-Slaughter's Superior Court complaint. We may take judicial notice of them.[23]

Ms. Sum-Slaughter did not name FINRA as a party to the Colorado proceeding or serve it with her vacatur motion. She does not dispute that FINRA

_____

[22] Because Ms. Sum-Slaughter's BrokerCheck report and the arbitration award are referenced in her complaint, are exhibits to FINRA's motion to dismiss the complaint, and are in the record before us, this court properly may notice and consider them on appeal from that dismissal. *See Tovar v. Regan Zambri Long, PLLC*, 317 A.3d 884, 894-95 (D.C. 2024); *Walker v. FedEx Off. & Print Servs., Inc.*, 123 A.3d 160, 164 (D.C. 2015).

[23] *See Walker*, 123 A.3d at 164 ("Proceedings in related cases may be judicially noticed." (quoting *Cannon v. District of Columbia*, 569 A.2d 595, 597 n.3 (D.C. 1990))).

had no knowledge of the proceeding and did not participate in it in any way. Merrill Lynch, the only named respondent, informed the Colorado court that it took no position on the motion to vacate and wished to be excused from attending any hearing or argument on the motion. Apparently, Merrill Lynch had no further involvement in the proceeding. The proposed order that Ms. Sum-Slaughter submitted to the Broomfield County Court characterized her motion as an "unopposed request for Relief from [a] Default Judgment," and that is what the court said it granted in a one-sentence order adopting her proposed order. (This was an apparent mischaracterization, as the FINRA arbitration award was not a default judgment.) The court did not provide any rationale for vacating the FINRA arbitration award. The court did not consider evidence relating to the arbitration award or address its merits or appropriateness.

Ms. Sum-Slaughter's Superior Court complaint alleges that, after she obtained the Broomfield County District Court's order, she returned to the FINRA arbitration forum and re-filed her expungement request against Merrill Lynch. FINRA rejected the request as ineligible for arbitration because her claims were identical to the ones she previously had arbitrated in FINRA's forum, which the arbitrator had denied.[24]

---

[24] Ms. Sum-Slaughter did not appeal FINRA's denial of a new arbitration to the SEC under 15 U.S.C. § 78s(d).

On the premise that the Colorado state court had vacated the FINRA arbitrator's ruling, Ms. Sum-Slaughter then filed her complaint in Superior Court for expungement of the customer dispute information from her CRD and BrokerCheck reports.[25]  The complaint requests this relief based on FINRA's "own rules for expungement," namely Rule 2080 and Rule 8312(g)(1), "and/or pursuant to [the Superior Court's] inherent equitable power."  The complaint states that the allegations against Ms. Sum-Slaughter should be expunged under Rule 2080 because they are "clearly erroneous, factually impossible, false, [and] do[] not arise from a sales-practice violation," and under Rule 8312 because they are "potentially defamatory," i.e., "misleading, inaccurate, erroneous, and portray [her] in a negative light."

Other than the two FINRA Rules, the complaint identifies no statute, constitutional provision, rule, or common law cause of action entitling Ms. Sum-Slaughter to the expungement relief she seeks.  However, the complaint asserts that the Superior Court should exercise its "inherent" power as a court of equity to order

---

[25] The complaint does not mention that, before Ms. Sum-Slaughter filed it in Superior Court, she had sued FINRA in the Denver County (Colorado) District Court seeking the same expungement relief.  After FINRA entered its appearance, however, Ms. Sum-Slaughter voluntarily dismissed the Denver case.  The pleadings are in the record before us as exhibits to FINRA's motion to dismiss in Superior Court.

FINRA to expunge the customer dispute from Ms. Sum-Slaughter's CRD and BrokerCheck reports because publication of the Occurrence "offers no regulatory value" and "does not benefit the public."

FINRA did not challenge the jurisdiction of the Superior Court to entertain Ms. Sum-Slaughter's complaint. Instead, FINRA moved to dismiss the complaint on three other grounds: (1) Ms. Sum-Slaughter failed to join an indispensable party, namely Merrill Lynch; (2) collateral estoppel precluded relitigation of her expungement claim following its denial in arbitration, because the Broomfield County District Court order, entered without findings or notice to FINRA, had no preclusive effect in the Superior Court proceeding; and (3) the complaint failed to state a cognizable claim for the equitable expungement relief sought. In her opposition, Ms. Sum-Slaughter took issue with each of those grounds. She argued that Merrill Lynch's participation as a party was unnecessary for the court to grant the relief she requested, and that collateral estoppel did not apply because the arbitration award had been vacated by a valid order from the Colorado court. And Ms. Sum-Slaughter contended that she had sufficiently stated a claim for expungement relief "either in accordance with FINRA Rules 2080 or 8312, or pursuant to the [Superior] Court's inherent equitable power."

The Superior Court granted FINRA's motion to dismiss on the collateral estoppel ground, without addressing the other two grounds or its subject matter jurisdiction. The court rejected Ms. Sum-Slaughter's premise that FINRA was bound by the Broomfield County order purporting to vacate the arbitration award. While noting that FINRA Rule 2080(b) itself did not include a directive "to name FINRA as a party [when] seeking judicial vacatur of an arbitration award denying expungement," the court reasoned that the vacatur order did not bind FINRA because under "general rules of the law, you can't hold a party to a judgment if that party was not given an opportunity to contest [it]." As a result, the court concluded that the "first arbitration award . . . was not vacated with respect to FINRA," so that Ms. Sum-Slaughter was "collaterally estopped from bringing a separate action to achieve the same result when she's already had an opportunity to litigate that in the arbitration forum through the FINRA system," because "you can either arbitrate or go to court but you can't do both."

## III.

In her initial briefing on appeal, and at oral argument, Ms. Sum-Slaughter contended that the Superior Court erred in dismissing her complaint on collateral estoppel grounds, and that she stated a plausible claim for equitable relief. In opposition, FINRA argued that collateral estoppel precludes Ms. Sum-Slaughter's

action, and that her complaint fails to state a claim on which any relief can be granted; in particular, that there is no cognizable claim for equitable relief in the form of expungement.

After oral argument, however, we identified a critical threshold question of law that neither party had addressed: whether there is subject-matter jurisdiction in the District of Columbia courts over Ms. Sum-Slaughter's action for expungement of the customer dispute information from her CRD and BrokerCheck reports. "Without jurisdiction, the Court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it [does not] exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."[26] "Where a substantial question exists as to this court's subject matter jurisdiction, it is our obligation to raise it, *sua sponte*, even though, as here, no party has asked us to consider it."[27] "Challenges to a court's subject matter jurisdiction cannot be

---

[26] *In re D.M.*, 771 A.2d 360, 364 (D.C. 2001) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)).

[27] *Id.* (quoting *Murphy v. McCloud*, 650 A.2d 202, 203 n.4 (D.C. 1994)) (brackets omitted).

waived."[28]  We therefore requested, and we have received, supplemental briefing by the parties directed to the jurisdictional question.

"Because the issue of subject matter jurisdiction is a question of law, . . . our standard of review is *de novo*."[29]  As subject matter jurisdiction in this case does not depend on the resolution of any factual question, we determine jurisdiction "by looking only at the face of the complaint and taking the allegations in the complaint as true."[30]  Ultimately, the burden is on Ms. Sum-Slaughter, as the party invoking the court's subject matter jurisdiction, to demonstrate that such jurisdiction exists.[31]

"As a court of general jurisdiction, the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia unless jurisdiction is vested exclusively in a federal court."[32]  In pertinent part, Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), provides that the federal

---

[28] *Slater v. Biehl*, 793 A.2d 1268, 1271 (D.C. 2002) (quoting *Arrington v. United States*, 585 A.2d 1342, 1344 n.2 (D.C. 1991)).

[29] *Id.* (internal quotation marks, brackets and citation omitted).

[30] *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002).

[31] *Off. of the People's Couns. for the District of Columbia v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 590 n.2 (D.C. 2024).

[32] *Slater*, 793 A.2d at 1271 (internal quotation marks omitted); *see also* D.C. Code § 11-921(b)(1).

district courts "shall have exclusive jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, the Supreme Court construed this statute to "confer[] exclusive federal jurisdiction of the same suits as 'aris[e] under' the Exchange Act pursuant to the general federal question statute," 28 U.S.C. § 1331.[33] The test for "arising under" jurisdiction is satisfied in "either of two circumstances," the Court explained.[34] First, "[m]ost directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted."[35] Second,

> even when a claim finds its origins in state law, . . . . a federal court has jurisdiction of a state-law claim if it necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state power.[36]

---

[33] 578 U.S. 374, 380 (2016).

[34] *Id.* at 383.

[35] *Id.*

[36] *Id.* (internal quotation marks, brackets, and citation omitted).

"That description," the Court explained, "typically fits cases . . . in which a state-law cause of action is 'brought to enforce' a duty created by the Exchange Act because the claim's very success depends on giving effect to a federal requirement."[37]

In *Turbeville v. FINRA*,[38] the Eleventh Circuit applied *Manning* to determine that Section 27(a) of the Exchange Act vested jurisdiction in federal court over claims for defamation and other state law torts asserted against FINRA in a state court lawsuit (which FINRA had removed to federal court). The defamation count was based on the publication in Turbeville's BrokerCheck report of allegations against Turbeville and a recommendation of discipline based on those allegations.[39] Turbeville's state court complaint charged that FINRA's Rules precluded this publication.[40] The other causes of action in the complaint similarly "rest[ed] expressly on allegations that FINRA violated its own rules."[41] Thus, the court concluded, the complaint on its face was "fundamentally a challenge to an SRO's compliance with its internal rules while carrying out its regulatory and enforcement

---

[37] *Id.* at 384.

[38] 874 F.3d at 1273-74.

[39] *See id.*

[40] *Id.*

[41] *Id.* at 1274.

functions," and the claims therefore necessarily required the court to interpret FINRA's Rules.[42] Because those Rules "are promulgated according to the Exchange Act's mandates," the court said, "their interpretation unavoidably involves answering federal questions."[43] And "[m]ore importantly," the court said, "Turbeville's suit does not just raise a federal question; it turns on the existence of a federally supplied right of action."[44] For as the court explained:

> Turbeville uses state-law claims to launch a collateral attack on FINRA's conduct in carrying out its disciplinary and disclosure functions under its SEC-approved rules. Were such a right of action to exist, it must have been supplied by federal law, because federal law—namely, the Exchange Act—creates SROs, vests them with a first-line role in the enforcement of federal securities law, and mandates creation of internal rules to govern their disciplinary and disclosure actions.
>
> When exercising these functions, SROs act under color of federal law as deputies of the federal government. To sue these actors, a litigant must obtain permission from the federal sovereign; otherwise, any state-law claims asserted against them for carrying out their federally mandated duties crash headlong into the shoals of preemption. *McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 317, 4 L. Ed. 579 (1819) ("The states have no power . . . to retard, impede, burden, or in any manner control the

---

[42] *Id.* at 1275.

[43] *Id.*

[44] *Id.*

operations of the constitutional laws enacted by congress to carry into effect the powers vested in the national government."). Thus, because Turbeville's complaint depends on a right of action supplied by federal law, the District Court concluded correctly that removal was proper. *See Manning*, [578 U.S. at 383] ("Most directly, and most often, federal jurisdiction attaches when federal law creates the cause of action asserted.").[45]

Much the same analysis applies to Ms. Sum-Slaughter's complaint against FINRA. The complaint plainly states that it is brought to enforce FINRA's compliance with its own Rules governing expungement of information in CRD and BrokerCheck reports; the complaint identifies no other rule, statute, constitutional provision, or common law basis for the equitable relief it seeks. The ability of the Superior Court to provide equitable remedies does not make up for the absence of any non-federal cause of action calling for remediation. Each of the three equitable "claims" in the complaint—for expungement, a declaratory judgment, or an

---

[45] *Id.* at 1275-76. The *Turbeville* court went on to conclude that the federal district court properly dismissed the complaint because "Congress did not intend to create a private right of action for plaintiffs seeking to sue SROs for violations of their own internal rules." *Id.* at 1276; *see also, e.g.*, *Lowe v. Nat'l Ass'n of Sec. Dealers, Inc. (In re Series 7 Broker Qualification Exam Scoring Litig.)*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("[C]ourts have consistently found Congress's intent under the Exchange Act precludes common law causes of action, and we agree with the reasoning of our sister circuits.") (citing cases). Because we conclude that the Superior Court lacked subject matter jurisdiction of Ms. Sum-Slaughter's complaint, we need not and do not address whether she has stated a right of action that she could have advanced in another forum.

injunction[46]—is merely a "remed[y], not [a] cause[] of action, and a court cannot grant a remedy without a cause of action."[47]  Here, the only plausible cause of action Ms. Sum-Slaughter alleges would be rooted in the Exchange Act itself, as she claims to be entitled to equitable relief based on FINRA's alleged failure to apply Rules 2080 and 8312 properly in her case.  Her reliance on that alleged failure, even as the basis for her invocation of the Superior Court's "inherent" equitable power, is concisely illustrated by the complaint's explanation that expungement is required as an equitable matter because continued publication has "no regulatory value."  As FINRA points out, this is a standard articulated by the SEC.[48]

In the words of the *Turbeville* court, Ms. Sum-Slaughter's complaint is thus "fundamentally a challenge to an SRO's compliance with its internal rules while carrying out its regulatory and enforcement functions,"[49] a challenge that would

---

[46] Ms. Sum-Slaughter cites to Super. Ct. Civ. R. 57 (declaratory judgment) and 65 (injunctions and restraining orders).

[47] *Rayner v. Yale Steam Laundry Condo. Ass'n*, 289 A.3d 387, 401 (D.C. 2023) (citations omitted); *see also* Super. Ct. Civ. R. 57 cmt. ("[A] declaratory judgment, like any other remedy, may only be granted in cases properly within the Court's jurisdiction.")

[48] *See* 68 Fed. Reg. 746782 (2003).

[49] *Turbeville*, 864 F.3d at 1275.

require the Superior Court to interpret those rules and evaluate FINRA's compliance with them and with the scope of FINRA's authority and duties under the Exchange Act itself. This "unavoidably involves answering federal questions" and necessarily "turns on the existence of a federally supplied right of action."[50] Ms. Sum-Slaughter's claims therefore "aris[e] under" federal law within the meaning of 28 U.S.C. § 1331, and are within the exclusive jurisdiction of the federal district courts pursuant to Section 27(a) of the Exchange Act.

---

[50] *Id.*; *see also Pee Pee Pop Trust v. FINRA*, No. 3:19-cv-00240-MMD-CBC, 2019 U.S. Dist. LEXIS 165024 at *6-9 (D. Nev. Sep. 26, 2019) (upholding federal question jurisdiction over complaint invoking state law cause of action as the basis for relief against FINRA, because "the complaint 'is on its face a challenge to FINRA's application of its internal rules in exercising its regulatory authority under the Exchange Act'" (quoting *Turbeville*, 874 F.3d at 1274)). Because Ms. Sum-Slaughter's complaint does not allege any cause of action having its "origins" in the law of the District of Columbia, *Manning*, 578 U.S. at 383, we have no occasion in this case to opine on whether such an allegation might survive a jurisdictional challenge under Section 27(a) of the Exchange Act. *See id.* (explaining that federal jurisdiction over a state-law claim exists if the claim "necessarily raises" a federal issue that is "actually disputed and substantial," and if a federal court may entertain the claim "without disturbing any congressionally approved balance of federal and state power").

**IV.**

On the ground that the Superior Court lacked subject matter jurisdiction, we affirm its dismissal of Ms. Sum-Slaughter's complaint.

*So ordered.*